Burke, J.
On October 23, 1961, Bertha and Conrad Mueller, after nearly a half century of marriage, executed a joint will providing’ that the estate of the first to die should go to the survivor, and on the survivor’s death their property should go to certain named beneficiaries. Nine months later in July of 1962, Bertha died and Conrad, pursuant to the joint will, received her entire net estate. The following month Mueller’s cousin, Martha Louise Mueller, the defendant herein, came to live with him, keeping house for him and, after he became ill, nursing him until his death in June, 1964. Conrad and Martha were married on March 12, 1963, and a week later on March 20 Conrad executed a new will naming his second wife sole beneficiary. This latter will has been admitted to probate.
On this appeal we are asked to determine the respective rights of the widow and the beneficiaries under the joint will to Mueller’s property, consisting of a house and lot acquired by Bertha and Conrad as tenants by the entirety in 1919, and a joint bank account in Conrad and Martha’s names, hut funded with money received by Conrad as the surviving owner of joint bank accounts in the names of Bertha and himself. There is unanimity of opinion in this court that Conrad’s final will was ineffective to alter the testamentary arrangement provided, for in the joint will, but we are divided over the question of whether this decedent’s earlier covenant Avith his first wife respecting the disposition to he made of their collective property on the death of the survivor should take precedence over the claim of the AvidoAv to a right of election to take against the earlier joint will.*
*232 On the first issue raised herein, the revocability of the joint will, the language in the instrument clearly indicates the Muellers’ intention that its provisions should be binding upon the survivor. It ‘ ‘ imports the joint disposition of the collective property of both, not the independent disposition by each of his own.” (Rastetter v. Hoenninger, 214 N. Y. 66, 72; see, also, Rich v. Mottek, 11 N Y 2d 90, 94; Tutunjian v. Vetzigian, 299 N. Y. 315, 320.) The recently decided case of Matter of Zeh (24 A D 2d 983, affd. 18 N Y 2d 900), wherein we held that the joint will in question was not binding upon the survivor, is distinguishable from the present case. In Zeh the survivor was given all the property, “meaning thereby that the survivor of us shall he the absolute oivner, to him or to her to have and to hold, his or her heirs and assigns absolutely and forever, of all that both of us possess.” (Emphasis added.) Under the rule that before the right to alter or revoke a will may be curtailed prior to the testator’s death his intention to so bind himself must be manifested clearly and unambiguously (see Oursler v. Armstrong, 10 N Y 2d 385, 389), the use of language such as ‘ ‘ absolutely ’ ’ barred our finding that the survivor was bound to the testamentary plan found in that joint will. In'the instant case, on the other hand, the Muellers’ intention is clear and unambiguous. The phrasing used in paragraph “ Third ”, providing that “ [ujpon the death of the second one of us to die, or in the event of our simultaneous deaths or deaths resulting from a common disaster, then the estate of the second decedent, or of both of us as the case may be, is hereby bequeathed, devised and disposed of as follows ”, is in the present tense, and thus implies a present joint intention to make a gift of the collective property to the named beneficiaries, effective upon the survivor’s death, but binding as of the signing of the joint will. The entire context of the will is plural, the pronoun “we” is used instead of “I”, “ our ” instead of “ my ” and “ us ” instead of “ me ”. (See Rich v. Mottek, supra, p. 94; Tutunjian v. Vetzigian, supra, p. 320.) Moreover, this will contains an express revocation of a prior joint will and it omits the provision in that prior will describing the survivor’s right to alter the disposition made of the signatories’ property. The omission of this provision in the later joint will is persuasive evidence that the second *233 joint will was intended to be irrevocable. (Compare the analysis employed by this court in Tutunjian, supra, p. 320, where we took note of the fact that the joint will there in question e( preserved and repeated the same dispositions without substantial change ” that were contained in an earlier will.)
On the other issue raised here, the effect of section 18 of the Decedent Estate Law on the right of the beneficiaries under the joint will to obtain specific enforcement of the covenant by Mueller contained in that will, we are of the opinion that the named beneficiaries under the joint will are entitled to prevail and a constructive trust in their favor was properly impressed upon the property received by the widow under the later will.
As to property received by Mueller under the joint will there can be no question but that upon his acceptance of such benefits under that instrument a trust' was impressed in favor of the beneficiaries to the extent expressed in Tutunjian. As to such property Mueller really took but an interest during his life with a power to use or otherwise dispose of principal, and the named beneficiaries took the interest which remained. Under such circumstances he had no property interest in these assets against which his widow’s right of election could operate.
The bulk of the property involved did not come to Mueller under the joint will. His interest in the real property, for example, commenced as a tenant by the entirety, ripening into sole ownership through his surviving his first wife. Similarly, his formal title to most of the personalty, consisting of savings accounts, derived from his surviving Bertha, with whom he had these joint accounts. In addition, it is not clear from the stipulated facts whether any of this jointly held property represented the independent estate of Bertha Mueller or whether, as is typical, it represented the jointly held fruits of Conrad’s labors outside the home aided by Bertha’s efforts within the home for their lifetime together. In any event we do not attempt a segregation of assets of husband and wife after a marriage of this duration. For all practical purposes, equity may content itself with considering the assets as their collective property, as if their estates had merged.
As to this collective property we feel that, on the death of one party to the joint will, the survivor was bound by the mutual *234 agreement that the named beneficiaries should receive the property remaining when the survivor died. (See Hermann v. Ludwig, 186 App. Div. 287, 297, affd. 229 N. Y. 544.) As we pointed out above, the agreement embodied in the joint will provides that “Upon the death of the second * * * the estate of the second * * * is hereby bequeathed, devised and disposed of as follows”. The survivor’s right to full ownership of the collective property is transformed and modified by this joint agreement, effective upon the other’s death as stated above, into but an interest during the life of the survivor with power to use the principal. ‘1 "While neither a husband nor a wife can dispose of property owned by them as tenants by the entirety so as tp affect the right of survivor-ship, they may do so by acting in concert, as by a joint will, or by a contract.” (Azzara v. Azzara, 1 A D 2d 1012, 1013; see, also, Swerdfeger v. Swerdfeger, 4 A D 2d 535.) After Bertha’s death, then, the property received by Conrad was his but subject to an interest enforcible specifically as to so much of it as he did not consume during his lifetime.
Contrary to the result which we here reach, the defendant urges that the widow’s right of election constitutes a limitation on the freedom of an individual to so incumber his estate. In support of this contention she directs our attention to a number of lower court cases involving marital separation agreements under which husbands covenanted to make a will leaving all or a portion of their property to the estranged wife or to their children and later remarried, leaving widows. In these cases the learned Surrogates correctly held that the former wife’s right to specific enforcement of the agreement must give way to the widow’s statutory right to a share in her husband’s estate. (Matter of Lewis, 4 Misc 2d 937; Matter of Erstein, 205 Misc. 924; Matter of Hoyt, 174 Misc. 512.) These cases are, however, distinguishable from the instant case and they present different equitable considerations. Separation agreements are usually attended by a present division of any jointly held property, and any provision for a future legacy is usually but an incident to the over-all settlement to be made with respect to the husband’s individual property and his obligation of support. In the case of the joint will, however, this instrument typically represents the sole attempt *235 by the signatories to effect a distribution of their collective property in a fashion agreeable to both. Most importantly, in those separation agreements there was no irrevocable obligation concerning the collective property. The husband did not, as Mueller did here, become sole owner of jointly owned property by virtue of surviving the former wife. As the divorced husband’s property after the agreement remains his own individual property, to which he holds beneficial as well as legal title, his widow’s right of election may be asserted against such assets.
Accordingly, the order of the Appellate Division affirming the judgment of Special Term should be affirmed, without costs.

The widow does not actually assert a right of election, as provided in section IS of the Decedent Estate Law, since under the later will, properly admitted to probate as the last will and testament of her husband, she takes all, though subject to the claims of the beneficiaries named in the joint will. Her argument is, rather, that the public policy finding expression in section 18, seeking- to guarantee the widow a distributive share in her husband’s estate, constitutes a limitation upon the right of a party to a joint will to bind himself to a testamentary arrangement which would not proAT.de a surviving spouse with such a share in his estate. Consequently, equity should decline to specifically enforce an otherwise binding obligation of the survivor under a joint will where such specific enforcement will frustrate this legislatively declared public policy.