ESTATE OF DAVID A. SIEGEL, LEONARD J. SIEGEL, EXECUTOR, CHARLOTTE HELWEIL, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1481–74.    Filed January 12, 1977.

*Barry D. Gordon,* for the petitioner.
*Walter C. Welsh,* for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $26,048.38 in the Federal estate tax of the petitioner, the Estate of David A. Siegel. Due to concessions,[1] the sole issue remaining for decision is whether petitioner is entitled to a marital deduction under section 2056(a)[2] for the value of the interest in property which decedent's surviving spouse received by virtue of his will.

#### FINDINGS OF FACT

Certain facts were stipulated and are so found.

David A. Siegel (hereinafter referred to as David or the decedent) died testate in New York on September 9, 1970. He was survived by his wife, Mildred Siegel (hereinafter referred to as Mildred), his adult son, Leonard J. Siegel, and his adult daughter, Charlotte Helweil. Leonard resided at New York, N. Y., and Charlotte resided at Roslyn, N. Y., at the time of the filing of the petition herein, and they are the executor and executrix of the Estate of David A. Siegel.

On December 4, 1962, David and Mildred executed mutual wills before the same witnesses after approximately 38 years of marriage. Some of the pertinent provisions of the decedent's will are as follows:

I, DAVID A. SIEGEL, residing in Kings County, State of New York, do hereby revoke all Wills and Codicils, as well as all other instruments of a testamentary nature heretofore made by me, and do hereby make, publish and declare this to be my Last Will and Testament in manner and form following:

---

[1] Petitioner has conceded an issue pertaining to the value for estate tax purposes of certain insurance commissions. In order to reflect this concession and to allow petitioner an adjustment for any additional expenses that may have been incurred in connection with this litigation, our decision will be entered under Rule 155.

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

FIRST: I declare that I am a citizen of the United States of America and I further declare that I have adopted and acquired the County of Kings, State of New York, as my domicile.

\* \* \*

THIRD: I hereby give, devise and bequeath to my beloved wife, MILDRED J. SIEGEL, all right, title and interest I may have in the home occupied by me as of the date of my death.

FOURTH: I hereby give, devise and bequeath to my beloved son, LEONARD SIEGEL any right, title and interest I may have in and to the business known as David A. Siegel Insurance, presently located at 55 Liberty Street, New York, New York.

FIFTH: I hereby give, devise and bequeath to my beloved wife, MILDRED J. SIEGEL, if she shall survive me, an amount equal to the maximum marital deduction allowable in determining the Federal Estate Tax payable by reason of my death, diminished by the value of all other property interests included in my gross estate for Federal Estate Tax purposes and which pass or have passed to my said wife, either under any other provision of this Will or in any other manner outside of this will, in such manner as to qualify for said marital deduction.

SIXTH: If my said wife and my said children LEONARD SIEGEL and CHARLOTTE STRAUBER or any issue of my said children shall survive me, I give, devise and bequeath all the rest, residue and remainder of my estate, to my said beloved children, share and share alike or if either of my said children has predeceased me, then the share which would have been received by my predeceased child I hereby give, devise and bequeath to the issue of said predeceased child, if any.

SEVENTH: If my said wife shall predecease me, then and in that event, I give, devise and bequeath all my estate including any lapsed legacies to my beloved children, LEONARD SIEGEL and CHARLOTTE STRAUBER, in equal shares per stirpes, to be theirs absolutely and forever. In the event that either of my children shall predecease me, then, the share which would have been received by my predeceased child, I hereby give, devise and bequeath to the issue of said predeceased child, if any.

\* \* \*

FOURTEENTH: If my said wife and I shall die under such circumstances that there is not sufficient evidence that we died otherwise than simultaneously, my said wife shall be presumed to have survived me and my estate shall be distributed and is hereby given, devised and bequeathed in such manner as would occur under this will, as if she had survived me.

FIFTEENTH: This will has been executed on the same date and simultaneously with the will of my beloved wife, MILDRED J. SIEGEL. It is understood that I will not change any provisions of this will, with respect to my children regardless of whether my beloved wife should predecease me.

IN WITNESS WHEREOF, I have on the 4th day of December, 1962, signed, sealed, published and declared the foregoing instrument as and for my Last Will and Testament, in the presence of each and all of the subscribing witnesses whom I have requested in the presence of each of the others, to

subscribe his name, with his address, as an attesting witness, in my presence, and in the presence of the others.

## Some of the pertinent provisions of Mildred J. Siegel's will are as follows:

I, MILDRED J. SIEGEL, residing in Kings County, State of New York, do hereby revoke all Wills and Codicils, as well as all other instruments of a testamentary nature heretofore made by me, and do hereby make, publish and declare this to be my Last Will and Testament in manner and form following:

FIRST: I declare that I am a citizen of the United States of America and I further declare that I have adopted and acquired the County of Kings, State of New York, as my domicile.

\* \* \*

THIRD: I hereby give, devise and bequeath to my beloved husband, DAVID A. SIEGEL, all right, title and interest I may have in the home occupied by me as of the date of my death.

FOURTH: I hereby give, devise and bequeath to my beloved husband, DAVID A. SIEGEL, if he shall survive me, an amount equal to the maximum marital deduction allowable in determining the Federal Estate Tax payable by reason of my death, diminished by the value of all other property interests included in my gross estate for Federal Estate Tax purposes and which pass or have passed to my said husband, either under any other provision of this will or in any other manner outside of this will, in such manner as to qualify for said marital deduction.

FIFTH: If my said husband and my children, LEONARD SIEGEL and CHARLOTTE STRAUBER, or any other issue of my said children shall survive me, I give, devise and bequeath all the rest, residue and remainder of my estate, to my said beloved children, share and share alike, or if either of my said children has predeceased me, then the share which would have been received by my predeceased child, I hereby give, devise and bequeath to the issue of said predeceased child, if any.

SIXTH: If my said husband shall predecease me, then and in that event, I give, devise and bequeath all my estate including any lapsed legacies to my beloved children LEONARD SIEGEL and CHARLOTTE STRAUBER, in equal shares per stirpes, to be theirs absolutely and forever. In the event that either of my children shall predecease me, then the share which would have been received by my predeceased child I hereby give, devise and bequeath to the issue of said predeceased child, if any.

\* \* \*

THIRTEENTH: If my said husband and I shall die under such circumstances that there is not sufficient evidence that we died otherwise than simultaneously, it shall be presumed that I survived my husband and my estate shall be distributed and is hereby given, devised and bequeathed in such manner as would occur under this will as if I had survived him.

FOURTEENTH: This Will has been executed on the same date and simultaneously with the Will of my beloved husband, DAVID A. SIEGEL, and it is understood and agreed that I will not change any provision of this

Will, with respect to my children regardless of whether my beloved husband should predecease me.

IN WITNESS WHEREOF, I have on the 4th day of December, 1962, signed, sealed, published and declared the foregoing instrument as and for my Last Will and Testament in the presence of each and all of the subscribing witnesses, whom I have requested in the presence of each of the others, to subscribe his name, with his address, as an attesting witness in my presence and in the presence of the others.

Following David's death, his will was probated in the Surrogate's Court, Kings County, N. Y. Mildred has not executed a will subsequent to the one executed on December 4, 1962.

On its Federal estate tax return which was timely filed, the estate claimed a marital deduction in the amount of $138,065.82, which represented one-half of the adjusted gross estate. Respondent disallowed a portion of that deduction in the amount of $88,726.51, based on his determination that Mildred's interest in such portion was terminable.

## OPINION

The issue presented is whether petitioner is entitled to a marital deduction under section 2056 for the value of the interest in property which decedent's surviving spouse received by virtue of his will.

In deciding this question, we must first look to the law of New York to determine whether the decedent's will provided Mildred a fee simple or merely a life estate in the property passing under it. *Estate of Julius Selling*, 24 T.C. 191 (1955). Under such law, the nature of the estate received by Mildred depends upon whether the mutual wills executed by the decedent and Mildred on December 4, 1962, created a contract which was binding on the survivor.[3] *Edson v. Parsons*, 155 N.Y. 555, 50 N.E. 265 (1898).

Respondent contends that, under New York law, Mildred was contractually bound to devise and bequeath to her children the unconsumed portion of the interest in property

---

[3] The wills are not strictly reciprocal. Paragraph Fourth of the decedent's will specifically provides that Leonard is to receive the decedent's interest in his insurance business. Paragraph Fourteenth of the decedent's will and paragraph Thirteenth of Mildred's will *both* provide that in case of their simultaneous death, it shall be presumed that Mildred survived David. These differences, however, have no bearing upon the issue before us.

that she received by virtue of her deceased husband's will. As such, he argues, the interest received by her was merely a life estate with less than a general power of appointment, and therefore constitutes a nondeductible terminable interest within the meaning of section 2056(b)(1) which does not qualify for the marital deduction under section 2056(b)(5).[4]

Under New York law, a contract to make a will irrevocable must be established by clear and convincing evidence of the testator's intent to so bind himself. *Rubenstein v. Mueller*, 19 N.Y.2d 228, 278 N.Y.S.2d 845 (1967); *Oursler v. Armstrong*, 10 N.Y.2d 385, 223 N.Y.S.2d 477, 179 N.E. 2d 489 (1961). Such evidence may be furnished by the language of the wills themselves or by extrinsic evidence. *Swerdfeger v. Swerdfeger*, 4 App. Div. 2d 535, 167 N.Y.S. 2d 775 (3d Dept. 1957).

---

[4] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) Limitation in the Case of Life Estate or Other Terminable Interest.—

(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

* * *

(5) Life estate with power of appointment in surviving spouse.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint

The degree of specificity required by the New York courts to establish such a contract was previously considered by us in *Estate of Edward N. Opal,* 54 T.C. 154 (1970), affd. 450 F.2d 1085 (2d Cir. 1971). In that case, the spouses executed a joint will which provided that the survivor was to receive certain gifts "absolutely and forever." However, the will also provided that upon the death of the surviving spouse, the residuum of the couple's estate would pass to their son. The preamble to the joint will contained the following language:

We * * * declare this to be our Last Will and Testament, hereby agreeing, each of us with the other in consideration of the dispositive provisions hereinafter set forth, that this Will shall be irrevocable by either of us without the written consent of the other, * * *

We concluded that the independent contractual language contained in the preamble provided the clear and convincing evidence required by the law of New York to establish the contract.

In affirming our decision, the Court of Appeals for the Second Circuit made the following observation: "The language in the preamble of the joint Will is so clear as to render supererogatory any citation of New York authority that a binding contract was created." *Estate of Opal v. Commissioner,* 450 F.2d 1085, 1086 (2d Cir. 1971).

In the instant case, paragraph Seventh of the decedent's will and paragraph Sixth of Mildred's will provide that the estate of the survivor would pass to the couple's children upon his or her death. Paragraph Fifteenth of the decedent's will and the reciprocal paragraph Fourteenth of Mildred's will contain an express promise by each testator that he would not change any of the provisions of his will, with respect to the couple's children.

In our opinion, the independent contractual language contained in these paragraphs, when viewed with the reciprocal nature of the two instruments in their entirety, is sufficiently analogous to that found in *Opal* so as to constitute strong evidence of the parties' intent to contractually bind themselves to dispose of their collective estate in a specified manner. See *Tutunjian v. Vetzigian,* 299 N.Y. 315, 87 N.E. 2d

---

the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

275 (1949); *Swerdfeger v. Swerdfeger, supra; Di Lorenzo v. Ciancio,* 80 Misc. 2d 193, 362 N.Y.S. 2d 939 (Queens County Sup. Ct. 1974); *In Re Rubin's Will,* 48 Misc. 2d 539, 265 N.Y.S. 2d 407 (Nassau County Surr. Ct. 1965); *Olsen v. Olsen,* 70 N.Y.S. 2d 838 (Queens County Sup. Ct. 1947).

Petitioner, however, has proferred three arguments in support of its position that the wills do not reflect a clear and unequivocal intent by the testators to create a contract of any nature. In essence, petitioner represents that: (1) The lack of identity between the language "it is understood" in paragraph Fifteenth of David's will and the language "it is understood *and agreed*" (emphasis added) in paragraph Fourteenth of Mildred's will, evidences a lack of mutual assent to the precise terms of the alleged contract. (2) Paragraph Fifth of David's will, paragraph Fourth of Mildred's will, and the simultaneous death provisions of the respective wills clearly indicate the parties' intent that the bequest to the survivor qualify for the marital deduction, an intent which is incompatible with the creation of such contract. (3) The parties' use of personal pronouns such as "I" and "my" rather than "we" and "our" indicates that no contract was intended.

We believe petitioner's first argument is clearly without merit. The word "understood," when employed in a written contract, has the same force as the word "agreed." Black's Law Dictionary (4th ed. 1968 rev.). Therefore, while we find the phrase "and agreed," contained in paragraph Fourteenth of Mildred's will, to be somewhat redundant, we conclude that the difference in such wording is insignificant in this instance.

Petitioner's second argument which is based on the phrase "in such manner as to qualify for said marital deduction," which appears in paragraph Fifth of the decedent's will, is likewise defective. In our opinion, this paragraph merely represents an example of the so-called "pecuniary marital deduction formula." Under the first part of such formula, Mildred was devised and bequeathed "an amount equal to the maximum marital deduction." Under the second part of the formula, however, the amount passing to Mildred under paragraph Fifth of the will is diminished by the amount of property passing to her under the other provisions of the will or outside the will, if her interest in that other property is

received "in such manner as to qualify for said marital deduction."

Therefore, we conclude that paragraph Fifth of the decedent's will has no bearing on whether the interest received by Mildred under this paragraph was intended to or would qualify for the marital deduction.[5] See *United States v. First Nat. Trust & Sav. Bank of San Diego,* 335 F.2d 107 (9th Cir. 1964).

Finally, we consider petitioner's argument based on the parties' choice of personal pronouns. In approaching this contention, we are aware of the significance that the New York courts have attributed to the use of words such as "we" and "our" as evidence of the parties' contractual intent when used in a joint will. See *Estate of Edward N. Opal, supra* at 159.

However, it does not necessarily follow that the failure to use such words in cases involving separate wills denotes a lack of contractual intent on the part of the testators. Furthermore, we believe the words "I" and "my" constitute the normal and expected usage in a separate will executed by one testator. Hence, we decline to interpret the parties' choice of pronouns as negating the express promises made by each testator in their respective wills. Accordingly, we reject petitioner's third argument. Cf. *In Re Fabbri's Will,* 2 N.Y.2d 237, 159 N.Y.S.2d 184 (1957).

Turning next to the circumstances surrounding the execution of the wills, we believe that such evidence likewise supports the conclusion that a contract was intended. The two wills before us were simultaneously executed by the parties before the same witnesses after approximately 38 years of marriage. In addition to signing her will, Mildred placed her initials on each page thereof. The couple's children were named as the ultimate beneficiaries under each will, upon the death of the surviving spouse. While certain negative testimony was elicited at trial concerning the facts and circumstances surrounding the execution of the two wills, such testimony

---

[5] Apparently, no real property passed to Mildred pursuant to paragraph Third of the decedent's will. Hence, no property passed to Mildred under the other provisions of the will.

was flawed by the absence of any present recollection of the event on the part of the witness who presented it.[6]

Therefore, we conclude that Mildred was contractually bound on David's death, to devise and bequeath to her children the unconsumed portion of the estate she received from her deceased husband by virtue of his will. *Estate of Edward N. Opal, supra; Tutunjian v. Vetzigian, supra; Rastetter v. Hoenninger,* 214 N.Y. 66, 108 N.E. 210 (1915).

Under New York law, the existence of this contractual obligation effectively limits the interest in property passing to Mildred to a life estate with broad powers over the use of the principal. *Estate of Edward N. Opal, supra;* see also *Rubenstein v. Mueller, supra; Dilorenzo v. Ciancio, supra.* Accordingly, we hold that the interest in property Mildred received by virtue of the decedent's will was terminable. *Estate of Edward N. Opal, supra;* see also *Estate of Robert Abruzzino,* 61 T.C. 306 (1973); *Estate of Saul Krampf,* 56 T.C. 293 (1971), affd. per curiam 464 F.2d 1398 (3d Cir. 1972).[7]

Lastly, we consider the applicability of section 2056(b)(5) which provides an exception to the general rule that a terminable interest fails to qualify for the marital deduction. In order for this exception to apply, the property interest passing to the surviving spouse must consist of a life estate with a power to appoint the interest as an unqualified owner to either herself or her estate. Sec. 20.2056(b)–5(g), Estate Tax Regs.

Since Mildred could not appoint the interest to either herself or her estate in a manner which would be free of the contractual obligation imposed by the mutual wills, the exception provided by section 2056(b)(5) does not apply. *Estate of Opal v. Commissioner, supra.*

---

[6] Mildred testified on direct examination that she signed her will without knowledge of its contents. However, on cross-examination she acknowledged that she did not remember what happened on Dec. 4, 1962, regarding the meeting with the lawyer to execute the wills. Nor is it a certainty that a failure on Mildred's part to read the document she signed would negate its binding effect as a contract. See *Mfrs. & Trad. Tr. Co. v. Commercial D. & H. Inc.,* 381 N.Y.S.2d 709 (4th Dept. 1976); *White v. Ipsardi,* 253 App. Div. 96, 300 N.Y.S. 1239 (4th Dept. 1937).

[7] An interpretation of a joint and mutual will under applicable State law may have further effects upon the death of the surviving spouse. See *Estate of Zac Emerson,* 67 T.C. 612 (1977).

Accordingly, we hold that the property interest passing from the decedent to his wife, Mildred, by virtue of his will does not qualify for the marital deduction.

*Decision will be entered under Rule 155.*