OPINION OF THE COURT
Lee L. Holzman, J.
In this SCPA 1421 proceeding, the novel question presented is the impact of the decedent’s obligation under a property settlement agreement (separation agreement) with his former wife to designate their daughter “as beneficiary of any pension/ retirement survivor benefits until her emancipation,” upon his surviving spouse’s right, pursuant to EPTL 5-1.1-A (b) (1) (G), to treat the pension “survivorship” benefits payable to the decedent’s daughter as a testamentary substitute subject to her elective share. Although there is no case directly on point, based upon a harmonious reading of Rubenstein v Mueller (19 NY2d 228 [1967]) and Kaplan v Kaplan (82 NY2d 300 [1993]), the court concludes that the daughter’s contractual right under the separation agreement to receive “any pension/retirement survivor benefits until her emancipation,” gives her a right that is not subject to the spouse’s elective share as to those benefits payable up to the date of her emancipation (EPTL 5-1.1-A [b] [5]), and that the spouse is entitled to an elective share based upon the value of the survivorship benefits payable after the date of the daughter’s emancipation (EPTL 5-1.1-A [b] [1] [G]).
On the adjourned return date of process in this proceeding, the parties agreed that the facts were not in dispute. Consequently, they stipulated to the treatment of their pleadings and other submissions as a motion and cross motion for summary judgment.
The decedent, a former correction officer, died on July 31, 2005. The decedent married the former spouse on December 23, 1993 and their daughter was born in June 1995. On February 7, 1996, the decedent filed an application with the New York City Employees’ Retirement System (NYCERS) seeking to retire from the Department of Correction with ordinary disability retirement benefits and, on July 3, 1996, he retired with such benefits. Prior to his retirement, the decedent’s former spouse filed for a divorce. On June 24, 1997, the Superior Court of New Jersey issued a final judgment of divorce which incorporated, *897 but did not merge, the parties’ separation agreement. The separation agreement provided, inter alia, for “equitable division and distribution of property” and obligated the decedent to designate the infant as beneficiary of any pension/retirement survivor benefits until her emancipation. On February 3, 1997, which was prior to the execution of the separation agreement, the decedent selected an option for his survivorship benefits, providing for the retirement allowance payable to him for life “be reduced to a lesser retirement allowance” so that this lesser allowance would continue to be paid upon his death to his daughter for her life should she survive him. NYCERS reports that the annual pension payable to the daughter is $12,600.28 and estimates its present value at approximately $260,000. NYCERS is withholding payment of the benefits pending receipt of a court order.
The surviving spouse, who married the decedent on February 20, 2004, contends that the NYCERS pension/retirement survivor benefits constitute a testamentary substitute against which her statutory right of election is effective. The guardian ad litem for the infant daughter opposes the application. Essentially, the guardian ad litem contends that: (1) due to the separation agreement entered into in connection with the New Jersey divorce the decedent was contractually obligated to designate the infant as his pension/retirement survivor benefits beneficiary and “was prohibited from changing that designation without violating the terms of the agreement,” and (2) pursuant to EPTL 5-1.1-A (b) (1), the designation of the infant as beneficiary of the NYCERS benefits prior to the second marriage rendered that designation irrevocable.
EPTL 5-1.1-A (b) (1) is of no avail to the daughter, because the exclusion therein of a premarital transaction from being treated as a testamentary substitute where the premarital transaction was “irrevocable or is revocable only with the consent of a person having a substantial adverse interest” does not, by its express language, apply to a “transaction described in clause (G).” Here, since the daughter was designated as the beneficiary of the survivorship benefits after September 1, 1992, there is no doubt that, absent the separation agreement provisions, the entire NYCERS’ pension plan survivorship benefits would be a testamentary substitute subject to the surviving spouse’s elective share pursuant to EPTL 5-1.1-A (b) (1) (G) (see Matter of Alent, 271 AD2d 73 [2000]; Estate of Sexton, NYLJ, July 3, 2003, at 27, col 3; Estate of Bacot, NYLJ, Sept. 24, 1999, at 28, *898 col 5). However, the issue becomes more complicated where the decedent has a preexisting contractual obligation under a separation agreement with a former spouse.
In Rubenstein v Mueller (19 NY2d at 234), the court cited with approval lower court cases holding that the former wife’s right to specific performance of a provision in a separation agreement obligating the decedent to make a will leaving property to the former spouse or children “must give way” to the spouse’s elective share. Nevertheless, the court concluded that those cases were not controlling where the decedent had received his first wife’s estate under the terms of a joint will and then executed a new will under which his second wife, instead of the beneficiaries designated in the joint will, was the sole beneficiary of his estate. Specifically, and notwithstanding a vigorous dissent, the majority held that the distribution under the joint will prevails over the surviving spouse’s elective share. The majority reasoned that “different equitable considerations” apply to property dispositions under joint wills than to a separation agreement provision requiring that, in the future, a legacy be made in a will, because such a provision “is usually but an incident to the over-all settlement” with respect to property and support, while a joint will “represents the sole attempt. . . to effect a distribution of their collective property” and creates an “irrevocable obligation concerning the collective property” (id. at 234-235). Thus, Rubenstein made new law by holding that, notwithstanding that a surviving spouse’s elective share prevails over a former’s spouse’s right under a separation agreement to receive a legacy under a will, the spouse’s right to an elective share against property passing after the decedent’s death would not be superior to that of a party who has a right to the property pursuant to the terms of a joint will.
In Kaplan v Kaplan (82 NY2d 300 [1993]), the rights of a former spouse under a separation agreement were elevated over the rights of a surviving spouse with respect to pension benefits payable by the Teachers’ Retirement System. Mr. Kaplan had agreed, in a separation agreement which was incorporated into the judgment of divorce, that he would designate his former spouse “100% irrevocable beneficiary” of his pension death benefits. Thereafter, he named his second wife as 58.5% beneficiary of the death benefit. The court, in holding that the former spouse was entitled to 100% of the death benefit, reversed a prior determination that an “anti-assignment statute” prevented the designation of any “irrevocable beneficiary.” The *899 court reasoned that since the enactment of the Equitable Distribution Law it is recognized that pension benefits are marital property subject to equitable distribution awards and, “[accordingly, separation agreements purporting to equitably assign pension benefits upon dissolution of a marriage should be accorded the same status and protection that court-ordered awards of pension benefits are entitled to” (id. at 307).
Prior to Kaplan v Kaplan (82 NY2d 300 [1993]) an argument could be advanced that Rubenstein v Mueller (19 NY2d 228 [1967]) constituted precedent for concluding that any provision in a separation agreement relating to the disposition of property after the decedent’s death is “but an incident to the over-all settlement” and, therefore, based upon equitable considerations, the rights of a former spouse and children under the agreement are subordinate to a surviving spouse’s elective share (see Matter of Dunham, 63 Misc 2d 1029 [1970], affd 36 AD2d 467 [1971], Iv denied 29 NY2d 485 [1971]). However, after Kaplan v Kaplan (82 NY2d 300 [1993]), and notwithstanding that Kaplan did not deal with the issue of an elective share because the decedent died prior to the effective date of EPTL 5-1.1-A (b) (1) (G), such an argument is no longer tenable with respect to rights to pension benefits contained in separation agreements providing for the equitable distribution of marital property. The Kaplan case clearly holds that former spouses and dependent children obtain a present property right in the spouse’s pension death benefits where such rights are granted in a separation agreement which equitably distributes the marital property and fixes the support obligations of the parties to the agreement. Thus, reading Rubenstein v Mueller (19 NY2d 228 [1967]) in conjunction with Kaplan v Kaplan (82 NY2d 300 [1993]) leads to the conclusion that the same equitable considerations that warrant the finding that a surviving spouse may not take an elective share against property passing to the beneficiary of a joint will where her husband already received his former spouse’s property under the joint will, warrant a finding that the surviving spouse may not take an elective share against marital property (pension benefits) irrevocably transferred in accord with the terms of a separation agreement which divides marital property and fixes support obligations.
As a general rule, the surviving spouse’s elective share is diminished by the obligations of the deceased spouse (EPTL 5-1.1-A [a] [2]; [b] [5]). In Estate of Raninga (NYLJ, Jan. 18, 2008, at 38, col 6), Surrogate Lopez Torres held that pursuant *900 to EPTL 5-1.1-A (a) (2), the executor correctly deducted, as a debt of the decedent, the claims of the former wife and children for retirement benefits under a separation agreement in determining the net estate from which the elective share is computed. The cases holding that alimony legacies payable under the decedent’s will are inferior to the surviving spouse’s right of election were distinguished by noting that, in the case at bar, “the decedent and his former spouse contracted to create certain alimony and child support rights which became the decedent’s debts to meet from the time of the parties’ divorce” (Estate of Raninga, NYLJ, Jan. 18, 2008, at 38, col 6).
Based upon balancing the conflicting public policy and equitable considerations that resulted in an expansion of the spouse’s elective share under EPTL 5-1.1-A, as well as the expansion of the rights of children and former spouses under the Equitable Distribution Law to enforce separation agreement provisions relating to marital property (Kaplan v Kaplan, 82 NY2d 300 [1993]), the court holds that the decedent’s obligation under the separation agreement to provide for pension/retirement survivor benefits for his daughter until she became emancipated resulted in a binding obligation until the daughter’s emancipation that is enforceable after his death. The decedent’s infant daughter does not prevail over the surviving spouse’s elective share with respect to survivor benefits payable to the daughter until her emancipation because the decedent designated her as the beneficiary of the survivor benefits shortly prior to the effective date of the separation agreement. Instead, she prevails because, under that agreement, pursuant to which the decedent received marital property and his support obligations were fixed, he was obligated to do so and gave up his right to have another receive these benefits until his daughter was emancipated. Assuming, arguendo, that the decedent failed to honor his obligation, the daughter could have enforced her contractual right to the pension benefits until her emancipation. It would defy logic to hold that the daughter has less of a right to the pension benefits because the decedent honored his contractual obligation than she would have had in the event that the decedent breached this contractual obligation. Consequently, to allow the surviving spouse to elect against the pension/retirement survivor benefits payable until the daughter’s emancipation would contravene the mandate of EPTL 5-1.1-A (b) (5), that the spouse’s right to an elective share against testamentary substitutes “shall not impair or defeat the rights of creditors of the decedent with re *901 spect to any matter as to which any such creditor has rights” (see Matter of King, 196 Misc 2d 250 [2003] [holding that a general creditor of the decedent could not reach death benefits payable by the Teachers’ Retirement System but noting that dependent spouses or children would be able to recover such benefits pursuant to the terms of a separation agreement]).
However, considering that the provision in the separation agreement for the benefits at issue was contained in the article dealing with “child support,” which obligation terminated at the date of the daughter’s emancipation, and that the agreement clearly provided that the decedent retained the right to select another beneficiary for his pension benefits upon the daughter’s emancipation, the court finds that the spouse’s right to an elective share prevails over the daughter’s right to those pensions benefits payable after the date of her emancipation. To the extent that the decedent selected an option for his NYCERS benefits, providing for payments to the daughter after her emancipation, this was a matter of choice rather than as a result of a contractual obligation that trumps a spouse’s elective share. Accordingly, the spouse may elect against the value of the survivor-ship benefits payable after the date of the daughter’s emancipation.